## Dietz et al. v. Commonwealth ex rel.

438

*McNees, Hollinger & Nurick,* and *Henry M. Hipple,* for plaintiffs.

*Francis J. Myers,* Deputy Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for defendants.

Fox, J., November 17, 1937.—We have before us a rule to show cause why a preliminary injunction should not be granted in the above proceeding in accordance with the prayer of plaintiffs as contained in their bill. Rule returnable November 12, 1937, 10 a.m.

No answer to this rule has been filed.

By agreement of counsel on both sides a hearing on the rule was had, testimony taken and argument.

The undisputed facts, inter alia, disclose that on July 7, 1937, the Game Commission of the Commonwealth passed a resolution declaring an open season for antlerless deer during the season of 1937, to wit, November 25th, 26th, and 27th, and that the said commission changed the season from that provided in The Game Law of June 3, 1937, P. L. 1225, viz., December 1st to 15th for male deer having two or more points to one antler, to the time from November 29th to December 11th, inclusive, 1937; that on September 30, 1937, the said commission amended the resolution of July 7, 1937; that that part of the resolution of the last-mentioned date which reads as follows:

"It being directed that said permits shall become available on October 1st, and may be issued to residents of the respective counties of this Commonwealth in which such open season is declared; that beginning November 1st, permits unissued prior to said date may be issued to duly licensed residents regardless of the county of residence, or to duly licensed non-residents. All such licenses shall be issued in the order of the application therefor, until the quota set for each county is exhausted"; was amended to read as follows:

"It being directed that said permits shall become available on and after October 11th and be issued, in the order of the applications therefor, to persons entitled to hunt without a license upon their own and adjacent lands, to duly licensed residents regardless of the county of residence, or to duly licensed non-residents, until the quota set for each county is exhausted."

The only advertisement published by the commission in various newspapers throughout the Commonwealth was made on or about October 16th, 23d, and 26th, and in those advertisements no mention or reference to the resolution of September 30th was inserted; that up to September 30, 1937, 37,000 applications had been made

by residents and nonresidents of the counties in which the opening for the killing of deer was declared and others; that application blanks were passed out by the commission for these applicants prior to September 30, 1937, in which last-mentioned application blanks, as appears by plaintiff's exhibit 6, paragraph 4, under "Important Questions Answered" "during October issuance of permits will be restricted to residents of the respective counties in which such open season is declared," and as appears from plaintiff's exhibit 7, in red ink under "Important Questions Answered" across the page "Special Notice. The Game Commission at its meeting September 30, 1937, amended the Antlerless Deer Resolution so that Special Deer Permits shall be issued in the order in which completed applications are received, regardless of place of residence or filing date.

"PENNSYLVANIA GAME COMMISSION"

Otherwise this is in the same form and language as plaintiff's exhibit 6. The permits were issued not earlier than November 1, 1937, and were issued in accordance with the amended resolution passed September 30, 1937, and the result was that the number of permits issued to residents of the respective counties was much less than those issued to nonresidents, and a large number of residents who did not file their applications in advance of nonresidents failed to secure permits, the quota of permits as fixed by the commission having been exhausted.

Bills of complaint for other counties, kindred to the instant one, have been filed and similar rules issued.

It is stipulated that the disposition of the instant case shall govern all the others.

The contentions of plaintiffs are:

1. The resolution establishing the said open season for antlerless deer is invalid because it fixes the season during a period when The Game Law expressly prohibits hunting with single-pellet guns. It also eliminates one day from the bear season.

2. The said resolution is invalid because it was not advertised as required by The Game Law.

3. The said resolution is invalid because section 501 of The Game Law, under which authority said resolution was adopted, constitutes an unlawful delegation of legislative power.

4. The resolution is invalid because the board made no specific findings to support its action within the scope of the powers delegated to it.

5(*a*). The actions of the Game Commission, in creating and administering the provisions with regard to the granting of special permits and the exemption of farmers from the provisions thereof, have been unreasonable and discriminatory and the denial of equal protection of the laws.

(*b*) The "liberal interpretation" of the Game Commission in exempting farmers from the requirement of obtaining special permits is another indication of the arbitrary and capricious manner in which the antlerless deer season is being administered.

6. Plaintiffs are not guilty of laches.

The contention of defendants is that the commission has not violated the statutory law, but had full authority under the act aforesaid to do what it did, and that plaintiffs are guilty of laches.

The act of assembly provides that the open bear season shall be from November 16th to November 25th, inclusive. The Game Law, supra, also provides in section 501(*a*):

"During the five days preceding the open season for deer, as fixed either by this act or by resolution of the commission, it shall be unlawful for any person, except in defense of person or property, to hunt for, pursue, or take, or attempt to hunt for, pursue, or take, wild birds or wild animals of any kind through the use of a rifle or any other firearm discharging but one ball or pellet at a single discharge, or to have in possession while hunting any rifle cartridges or single-ball shotgun shells during

such five-day period." The act also makes a violation of the statute a criminal offense for which a penalty is provided. Fixing November 25th for killing antlerless deer either shortens the statutory period for carrying firearms, five days or one day, or shortens the bear-hunting period by five days or one day as fixed by statute. The commission may have power to do one, but not both.

As to the second contention, section 505 of The Game Law requires:

". . . a notice to that effect shall be published by the commission in not less than two newspapers of general circulation in each county affected, one time each week for at least two consecutive weeks, setting forth, either in full or in summarized form, the action of the commission and the rules and regulations adopted relative thereto."

The first advertisement or notice was published in two newspapers of the county affected on or about October 16th and the last on or about October 29th, and in which advertisements, as appears from the exhibits, mention of the resolution of July 7th only is made. No reference has been given to the resolution of September 30th, changing in a material manner what was resolved on July 7th, and no notices of the rules and regulations relative to the special season were published in the advertisements as is required by section 501 of the said act, to wit:

". . . the commission may, by appropriate rules and regulations, a summary of which shall be published as hereinafter specified". See section 505 above quoted.

An examination of the advertisements, plaintiffs' exhibits 3 and 4, show the commission failed to do this, and this failure is a clear violation of the section quoted.

3. We deem it unnecessary for the purpose of the disposition of this case to give an opinion upon this contention.

4. Section 501, relating to open seasons, inter alia, provides that the commission may declare an open season by proper rules and regulations, a summary of which shall be published if in the opinion of the commission

such action is necessary and also that such additional open season will not jeopardize the future supply of game. It is a well-settled rule of law that an administrative body must make findings of fact as stating the grounds of its action in exercising delegated authority: Rohrer v. Milk Control Board, 121 Pa. Superior Ct. 281, 319, but the legislature by the legislation above quoted did not require any findings of fact or summary thereof, when the commission is of the opinion that an open season will not jeopardize the future supply of game. The Act of June 9, 1931, P. L. 455, in section 509 authorizes such action "when it is proven to the satisfaction of the board." This is eliminated from the present game law. We are of opinion, however, that it is unnecessary for us to pass upon that at this time.

5(a). The resolution of July 7th provided that, until November 1st, special permits for each county should be issued to residents of that county; after November 1st, the remainder of the quota of special permits were to be issued to applicants in the order in which applications had been received until the quota for the respective county was filled. By the resolution of September 30th this was changed. The special right of those residing in the respective counties and resident applicants were eliminated, and both resident applicants and nonresident applicants were given special permits in accordance with the date of the filing of their applications. The residents of the county who had received the application blanks before September 30th were led by the blanks to believe that they had a right to file them by November 1st. The change of the resolution of September 30th, without full and complete advertisements and notice resulted in the loss of permits to many applicants residing in the respective counties and the permits went to others not residing there. Confusion existed by reason of the inadequate and late advertisements and by section 4 in the blank applications, issued by the commission upon request, of which 37,000 signed applications had been received by the com-

mission before it changed the order on September 30th. We are of opinion that because of the late change in the resolution and the later advertisements of the same, the action was capricious and worked an injustice to those residents who applied before November 1st, believing that to be the last date on which they could apply and have a permit in their own county.

5(b). A very short time before the hearing, the public press carried an announcement that the Governor felt that the farmers should be entitled to hunt antlerless deer on their farms without obtaining special permits, as shown by plaintiffs' exhibit 8, and that in response to the said request the commission had decided that farmers need not obtain special permits to hunt antlerless deer during the prescribed season. Section 317 of The Game Law provides that farmers may hunt on their own lands without securing the license provided for by this article. That particular article of the law, article III, relates solely to the regular resident hunting license, and not the special permits for hunting antlerless deer. Section 501(c) of the latter act, which is in a different article, relates to special permits for antlerless deer and requires that special permits be obtained in order to be entitled to hunt, and no exceptions are permitted, and further that it is unlawful for any person to hunt for any deer without visible antlers without such a special antlerless deer permit. We are of the opinion that the commission erred in its liberal interpretation of the act.

6. It is contended by defendants that plaintiffs were guilty of laches. The bill was filed on November 4th, and on account of the confusion, of which we have already spoken, we cannot say that plaintiffs were guilty of laches. If they were guilty of laches, then we think defendants were also guilty of laches in not making earlier publication or advertisements of the resolution. Whatever laches may appear, if any, is not sufficient to warrant the dismissal of the bill on that account.

Wherefore we are of the opinion that the rule should be made absolute and a preliminary injunction be awarded.

And now, November 17, 1937, upon due consideration, and for the reasons above given, a preliminary injunction is awarded in this case. November 22, 1937, 10 a.m. is fixed for hearing.